UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TONY PATRINICOLA, | Case No. 3:13-cv-05667-RJB-KLS |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | Noted for August 8, 2014 |
| Defendant. | |

Plaintiff has brought this matter for judicial review of defendant's decision finding he had been overpaid $8,906.80 in retirement insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below the Court find defendant's decision to assess the overpayment was improper and therefore should be reversed, and that this matter should be remanded for further administrative proceedings to determine the amount of benefits that should be repaid plaintiff, if any, in light of the reduction thereto caused by the improperly assessed overpayment.

FACTUAL AND PROCEDURAL HISTORY

On February 15, 1997, plaintiff filed an application for retirement insurance benefits. See ECF #13, Administrative Record ("AR") 17. Plaintiff was notified by the Social Security

REPORT AND RECOMMENDATION - 1

Administration ("SSA") on April 8, 1997, that he was entitled to monthly retirement insurance benefits beginning April 1997. See id. On October 19, 1997, the SSA determined that due to plaintiff's excess earnings, he was overpaid with regard to such benefits, further notifying him that future benefits would be withheld for repayment of the overpayment.[1] See AR 119. Plaintiff did not appeal that determination. See ECF #14, p. 3. Another determination of overpayment and notice of benefits deduction for the years 1999 and 2000 – which plaintiff also did not appeal – was issued by the SSA on September 3, 1999. See id.; AR 34.

On April 28, 2007, the SSA notified plaintiff of a change to the amount of retirement insurance benefits he would receive, based on a change to his monthly benefits beginning December 2005. See AR 20. Plaintiff filed a request for reconsideration of that determination on May 3, 2007 (see AR 22), and on July 27, 2007, the SSA notified him that he had been overpaid benefits in the amount of $12,072.00 based on earnings during the years 1998 and 1999 (see AR 26). On August 10, 2007, plaintiff filed a request for reconsideration of that determination as well (see AR 29), and on September 11, 2007, the SSA informed him that the July 27, 2007 determination was being superseded, and that the amount of the overpayment, based on earnings during the years 1997-2000, had been reduced to $8,909.80 (see AR 124).

On July 16, 2009, the SSA sent plaintiff another notice informing him that the correct amount of retirement insurance benefits he was overpaid was $9, 216.40, and that the matter would be sent to the Office of Hearings and Appeals for a hearing before an administrative law judge ("ALJ"), which was held on November 16, 2009, at which plaintiff, unrepresented by counsel, appeared and testified. See AR 61-64, 227-58. In a decision dated August 13, 2010, the ALJ determined plaintiff had received a net overpayment of $8,906.80 in retirement insurance

---

[1] Up until January 1, 2000, the amount of plaintiff's retirements benefits were subject to deductions each year based on his annual earnings when the law was changed and his benefits were no longer subject thereto. See AR 17.

REPORT AND RECOMMENDATION - 2

benefits. See AR 17-19.  Plaintiff's request for review of the ALJ's decision was denied by the

Appeals Council on August 10, 2012, making it the final decision of the Commissioner of Social

Security (the "Commissioner").  See AR 8; 20 C.F.R. § 404.981.

On August 7, 2013, plaintiff filed a complaint in this Court seeking judicial review of the

Commissioner's final decision.  See ECF #1.  The administrative record was filed with the Court

on November 18, 2013. See ECF #13.  The parties have completed their briefing, and thus this

matter is now ripe for the Court's review.  Plaintiff argues the Court should find the SSA's 2007

and 2009 overpayment determinations were untimely, and therefore should reverse and remand

this matter and order the Commissioner to find there was no overpayment.

In the alternative, plaintiff argues the Court should reverse and remand this matter and

order the Commissioner to find there was no overpayment, on the basis that the decision of the

ALJ is not supported by substantial evidence.  Defendant agrees this matter should be reversed

and remanded, but for the purpose of further consideration of whether an improper overpayment

determination was actually made, in light of additional evidence in the record and questions

concerning the accuracy of some of the evidence contained therein, and unresolved issues with

respect to the timeliness of the SSA's overpayment determinations.

Because the undersigned finds those determinations were untimely, however, reversal

and remand of this matter with instructions that no overpayment should have been assessed is

warranted.  The undersigned finds as well that further administrative proceedings are warranted

for the purpose of determining whether plaintiff is due any repayment of retirement insurance

benefits in light of the improper overpayment assessment.

## DISCUSSION

As noted above, in 1997 and 1999, the SSA issued its initial retirement insurance benefits

REPORT AND RECOMMENDATION - 3

1   overpayment determinations. <u>See</u> 20 C.F.R. § 404.900(a)(1) ("[i]nitial determination" includes

2   "a determination we make about your entitlement or your continuing entitlement to benefits or

3   about any other matter, as discussed in [20 C.F.R.] § 404.902, that gives you a right to further

4   review"); 20 C.F.R. § 404.902(j), (k) (initial determinations include determinations about "[a]ny

5   overpayment or underpayment of your benefits" and "whether an overpayment of benefits must

6   be repaid to us").  Also as noted above, plaintiff did not appeal those initial determinations. <u>See</u>

7   20 C.F.R. § 404.987(a) ("Generally, if you are dissatisfied with a determination . . . , but do not

8   request further review within the stated time period, you lose your right to further review and

9   that determination . . . becomes final.").

10

11         An initial determination thus is "binding" unless a request for reconsideration of that

12   determination is made "within the stated time period," or the SSA itself chooses to revise it. 20

13   C.F.R. § 404.905.  But the SSA may reopen or revise an "otherwise final and binding" initial

14   determination on its "own initiative" only under certain conditions. 20 C.F.R. § 404.987(a), (b);

15   20 C.F.R. § 404.988.  For example, the SSA may do so "[w]ithin 12 months of the date of the

16   notice of the initial determination, for any reason," or "[w]ithin four years of the date of the

17   notice of the initial determination if [it] find[s] good cause, as defined in [20 C.F.R.] § 404.989,

18   to reopen the case." 20 C.F.R. § 404.988(a), (b).  Defendant does not dispute that the 2007 and

19   2009 overpayment determinations constitutes a reopening of the 1997 and 1999 overpayment

20   determinations.  Nor does defendant argue subsections (a) and (b) of 20 C.F.R. § 404.988 apply

21   here, and clearly they do not as both the 2007 and 2009 determinations were made well beyond

22   the permitted time periods.[2]

23

24   _____

25   [2] The Commissioner's regulations do provide that the SSA "may revise a determination . . . after the applicable time period in § 404.988(a) or § 404.988(b) expires if [it] begin[s] an investigation into whether to revise the determination . . . before the applicable time period expires." 20 C.F.R. § 404.991a.  The investigation, however, must have been "diligently pursued . . . to its conclusion," and "[d]iligent pursuit will be presumed to have been met

REPORT AND RECOMMENDATION - 4

1    Defendant suggests the situation set out in 20 C.F.R. § 404.988(c)(8) may apply in this

2    case.  Subsection (c)(8) provides that an initial determination may be reopened "[a]t any time if"

3    that determination "is fully or partially unfavorable to a party, but only to correct clerical error or

4    an error that appears on the face of the evidence that was considered when the determination . . .

5    was made."  Defendant does not argue the SSA reopened the initial overpayment determinations

6    merely to correct clerical error, nor does the record indicate such is the case. See AR 20, 26, 124;

7    Program Operations Manual Systems ("POMS") GN 04010.010, https://secure.ssa.gov/poms.nsf/

8    lnx/0204010010.[3]  Defendant does argue that in the process of recalculating plaintiff's retirement

9

10   benefits in 2007 and again in 2009, "it appears that plain errors were found, resulting in multiple

11   and conflicting overpayment assessments." ECF #27, p. 6.

12       Even if the recalculations the SSA performed in 2007 and 2009, resulted in the discovery

13   of evidence that made it "absolutely clear" or "unmistakably certain" that the initial overpayment

14   determinations were incorrect[4] – and it is far from clear such is the case[5] – the POMS expressly

15

16   _____

17   if [the SSA] conclude[s] the investigation and if necessary, revise[s] the determination . . . within 6 months from the
     date [it] begin[s] the investigation." 20 C.F.R. § 404.991a(a).  On the other hand, if the SSA has "not diligently

18   pursued the investigation to its conclusion," then it "will revise the determination" only "if a revision is applicable
     and if it will be favorable to" the claimant. 20 C.F.R. § 404.991a(b) ("We will not revise the determination . . . if it

19   will be unfavorable to you.").  As plaintiff notes, however, there is no indication that the SSA began an investigation
     of the initial overpayment determinations prior to the April 28, 2007 notification it sent him, which as noted above is

20   long after the periods set forth in 20 C.F.R. § 404.988(a) and (b) expired, and therefore long after any investigation
     into those initial determinations would have had to begin and would be presumed have been diligently pursued and

21   concluded.  Defendant is correct that if the error appearing "on the face of the evidence" rule set forth in 20 C.F.R. §
     404.988(c)(8) is applicable to this case, then the six month diligent investigation time bar would not apply.  But as

22   discussed below, that rule is not applicable.

23   [3] While the POMS, an internal agency directive, "does not have the force of law," the Ninth Circuit has recognized it
     as "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

24   [4] According to the POMS, "[a]n "error on the face of the evidence exists where it is **absolutely clear** that the
     determination . . . was incorrect." POMS GN 04010.020A, https://secure.ssa.gov/poms.nsf/lnx/0204010020 (further

25   providing that it must be "unmistakably certain that the determination . . . was incorrect" at the time it was made)
     (emphasis in original).

26   [5] Indeed, defendant herself points to the "very complicated" nature of the recalculations the SSA performed and the
     "problems with the documentation of" the overpayments, further characterizing plaintiff's file as being "rife with
     unanswered questions and inconsistent results." ECF #27, p. 6.

REPORT AND RECOMMENDATION - 5

provides that a determination based on clerical error or error on the face of the evidence "should be **reopened only where the net effect of the reopening would be favorable to the claimant**." POMS GN 04020.080C (emphasis in original).  The POMS goes on to explain that "the sum total effect of the reopening must be favorable to the claimant, i.e., give him or her something he or she did not have before the reopening." Id.  Clearly, though, the 2007 and 2009 overpayment determinations produced a *less* favorable result for plaintiff, in that they resulted in even greater overpayments being assessed and thus greater reductions in his benefits, then were caused by the initial 1997 and 1999 overpayment determinations. [6]

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was overpaid benefits based on the overpayment determinations the SSA made in 2007 and 2009.  Accordingly, the undersigned recommends as well that the Court reverse defendant's decision assessing the overpayment, and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein, including vacating the overpayment assessment and determining whether plaintiff is due any repayment of benefits in light of that erroneous assessment.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

---

[6] According to defendant, the SSA "has advised that copies of letters that were sent to Plaintiff, dated October 19, 1997, March 27, 2000 and May 25, 2007, should be included in the record because the contents of these letters are responsive to at least some of Plaintiff's concerns." ECF #27, p. 5; see also ECF #28, p. 2.  But there is nothing to indicate those letters would change the outcome of this case.  First, as discussed above the record clearly shows, and defendant does not dispute that the 2007 and 2009 overpayment determinations resulted in an unfavorable result for plaintiff, and thus the exception to the binding and final nature of the 1997 and 1999 overpayment determinations contained in 20 C.F.R. § 404.988(c)(8) is not available.  Second, even without the benefit of seeing the content of those letters, it also is clear that they would not support a finding that the SSA conducted a diligent investigation in accordance with 20 C.F.R. § 404.991a.  This is because even if the 1999 and 2000 letters indicate an investigation or investigation(s) began within the time periods set forth in 20 C.F.R. § 404.988(a) and (b), there is no indication they were diligently completed, i.e., within the presumed six months of when they began.  The same is true regarding the 2007 letter, particularly as it is dated long after the time for beginning such an investigation had run.

REPORT AND RECOMMENDATION - 6

72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 8, 2014**, as noted in the caption.

DATED this 21st day of July, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7